UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
BETTY JEAN SMITH,

              Plaintiff,

     - against -

JO ANNE B. BARNHART,

              Defendant.
-------------------------------------------------------X

**R E P O R T    A N D
<u>RECOMMENDATION</u>**

06 CV 1796 (CBA)


On April 18, 2006, plaintiff Betty Jean Smith filed this action pursuant to Title VII of the

Civil Rights Action of 1964, as amended, and the Americans With Disability Act, alleging that

her employer, the Social Security Administration ("SSA"), discriminated and retaliated against

her for exercising her rights by submitting complaints to the Equal Employment Opportunity

Commission ("EEOC"). On May 15, 2008, defendant, Commissioner of the SSA,[1] filed a

motion for summary judgment, seeking dismissal of plaintiff's claims in their entirety. On July

25, 2008, defendant's motion was referred to the undersigned to prepare a Report and

Recommendation. For the reasons set forth below, it is respectfully recommended that

defendant's motion be granted.

\

---

[1] At the time plaintiff commenced the suit, the Commissioner of the SSA was Jo-Anne
Barnhart, who was sued in her official capacity. The current Commissioner, Michael J. Astrue,
assumed office on February 12, 2007 and as such should now be the named defendant in this
case.

## FACTUAL BACKGROUND

Since 1986, plaintiff Smith has been employed as an SSI claims representative at the SSA Avenue X District Office in Brooklyn, New York. (Def.'s 56.1 Stmnt. ¶ 1; Pl.'s 56.1 Opp. ¶ 1).[2] In 1996, plaintiff was given additional due process case responsibilities but retained the title of claims representative. (Def.'s 56.1 Stmnt. ¶ 2; Pl.'s 56.1 Opp. ¶ 2).[3]

From 1996 through October 2007, William Timchek was plaintiff's direct supervisor at the Avenue X Office. (Def.'s 56.1 Stmnt. ¶ 3; Pl's. 56.1 Opp. ¶ 3).[4] Since approximately 1987, Alyce Furman has been District Office Manager for the Avenue X Office, and since approximately 1997, Steve Halpern has been the Assistant District Manager. (Def.'s 56.1 Stmnt. ¶¶ 4-5; Pl.'s 56.1 Opp. ¶¶ 4-5).

As a claims representative, plaintiff conducts in-person interviews of SSI claimants, makes telephone calls related to her work, and uses an SSA computer with access to the internet and the SSA intranet to process non-medical appeals and fiduciary work. (Def.'s 56.1 Stmnt. ¶¶ 8-9; Pl.'s 56.1 Opp. ¶¶ 8-9). Plaintiff is also required to use the SSA domain name and an email

---

[2] Citations to "Def.'s 56.1 Stmnt." refer to Defendant's Local Civil Rule 56.1 Statement, dated May 15, 2008. Citations to "Pl.'s 56.1 Opp." refer to Plaintiff's Local Civil Rule 56.1 Statement in Opposition, dated June 30, 2008.

[3] Defendant claims that although plaintiff has been employed with the SSA continuously from 1986 through the present, she was out of work on a combination of sick leave, annual leave and leave without pay from July 18, 2003 until January 2, 2004, allegedly due to complications from Lupus and Raynaud's Syndrome. (Def.'s 56.1 Stmnt. ¶¶ 6-7). Plaintiff claims that she has been classified as disabled due to this syndrome and that she has suffered several amputated fingers and toes as a consequence. (Pl.'s 56.1 Opp. ¶ 82). She contends that she has sued the SSA regarding leave time and a refusal to allot her religious comp time. (Id. ¶ 83).

[4] Plaintiff notes that recently she was assigned to receive a new supervisor. (Pl's. 56.1 Opp. ¶ 3).

account, which the SSA first assigned to her in approximately 1997. (Def.'s 56.1 Stmnt. ¶¶ 10, 11; Pl.'s 56.1 Opp. ¶ 10, 11).

On January 31, 2000, William A. Halter, Deputy Commissioner of SSA, issued a memorandum to all SSA employees, entitled "New Social Security Administration (SSA) Policy on Limited Personal Use of Government Office Equipment Including Information Technology - Information" (the "Policy"). (Def.'s 56.1 Stmnt. ¶ 14; Florio Dec.[5] Ex. B; Pl.'s 56.1 Opp. ¶ 14). According to the defendant, the SSA posted the Policy on the SSA intranet on September 2, 1999, and District Office Manager Furman provided annual reminders to the employees at the Avenue X Office prior to 2002, which detailed and referenced regulations relating to the use of government property. (Def.'s 56.1 Stmnt. ¶¶ 19-23). Plaintiff concedes that she is required as a claims representative to be familiar with current SSA policies and that these policies are available over the SSA intranet to which she has access. (Pl.'s 56.1 Opp. ¶¶ 12-13; Def.'s 56.1 Stmnt. ¶¶ 12-13).

The Policy lists specific instances of inappropriate personal use of government office equipment, including the use of telephones and email to: "9. [m]aintain or support a personal private business . . .," and "10. [e]ngage in any outside fundraising activities, endorse any product or service, participate in any lobbying activity or engage in any prohibited political activity." (Def.'s 56.1 Stmnt. ¶ 16, subpart c(9)-(10) at 6; Florio Dec. Ex. B). The Policy, which became effective on February 1, 2000, also makes it clear that it is the employees' responsibility "to ensure that they are not giving the false impression that they are acting in an official capacity

---

[5]Citations to "Florio Dec." refer to the Declaration of Assistant United States Attorney Kelly Horan Florio, dated May 15, 2008.

when they are using government office equipment, including information technology for nongovernment purposes." (Id., subpart D at 7). The Policy requires employees to issue "an adequate disclaimer" if there is any expectation that an employee's personal use could reasonably be interpreted to represent the SSA.[6] (Id.) According to the Policy, "disciplinary or adverse actions" may be taken for unauthorized or improper use of Government office equipment. (Id., subpart G at 8). Since 2002, the reminders have been sent to employees via electronic mail. (Id. ¶ 25).[7]

Part 1.4 of the Annual Personnel Reminder (the "Reminder") sent to the SSA employees in 2002 instructs employees that they "may make limited personal use of Government office equipment such as personal computers, facsimile machines, photocopiers, Internet services, E-mail, etc. for non-government purposes when such use: . . . [d]oes not violate the Standards of Ethical Conduct for Employees of the Executive Branch." (Def.'s 56.1 Stmnt. ¶ 24). The Reminder further prohibits employees from using government equipment to "[m]aintain or support a personal business." (Id., Florio Dec. Ex. D).

Beginning in 2003, the SSA Human Resources International Communications email address has provided an annual email to each SSA employee with a link to the Reminder on the SSA intranet, which states that each employee must be familiar with the terms of the Reminder. (Id. ¶ 26). Although plaintiff neither admits nor denies defendant's assertions regarding these

_____

[6]As an example of an acceptable disclaimer, the Policy suggests: "'The contents of this message are mine personally and do not reflect any position of the Government or the [SSA]." (Id.)

[7]Plaintiff neither admits nor denies that the Policy was posted on the SSA intranet or that reminders were sent to SSA personnel at the Avenue X Office. (Pl.'s 56.1 Opp. ¶¶ 1-23).

email reminders (see Pl.'s 56.1 Opp. ¶¶ 25-27), the government has provided copies showing that these email reminders were sent on October 16, 2003 and November 8, 2004. (Def.'s 56.1 Stmnt. ¶ 27; Florio Dec. Ex. E).

On September 30, 2004, SSA issued an Information Systems Security Bulletin (the "Bulletin") which reiterated the prohibition of using government equipment for "engaging in business or profit activities emails." (Id. ¶ 30; Florio Dec. Ex. F). The Bulletin, entitled "Personal Use of Government Equipment," was made available on the SSA intranet and was forwarded by the District Manager to the staff at the Avenue X Office on October 8, 2004. (Id. ¶¶ 31-32). Plaintiff denies that the Bulletin was forwarded to the entire staff. (Pl.'s 56.1 Opp. ¶ 32).

As of June 2007, plaintiff had been affiliated with the American Baptist Church for 14 years. (Id. ¶ 33; Def.'s 56.1 Stmnt. ¶ 33). In or around 1988, plaintiff became a licensed Minister at Riverside Church.[8] (Pl.'s 56.1 Opp. ¶ 34; Def.'s 56.1 Stmnt. ¶ 34).

Defendant alleges that as part of her duties as a minister, plaintiff wrote up to 50 letters a month, and that in 1993, she created stationery and business cards listing her title as "Minister Betty J. Smith" with the church name and plaintiff's home address and phone number. (Def.'s 56.1 Stmnt. ¶¶ 35, 37). Although plaintiff denies these allegations in her opposition to defendant's 56.1 Statement, her deposition testimony supports defendant's assertions. (Florio Dec. Ex. A at 33-34, 40). It is undisputed, however, that plaintiff received a stipend from Riverside Baptist Church sometime prior to November 2004. (Def.'s 56.1 Stmnt. ¶ 36; Pl.'s 56.1

---

[8]The parties dispute whether plaintiff was a licensed minister of the American Baptist Church or the Riverside Church. (Compare Pl.'s 56.1 Opp. ¶ 34, with Def.'s 56.1 Stmnt. ¶ 34).

Defendant further contends that in 2004, plaintiff revised her business cards and stationery to reflect that she was a minister at Riverside Church. (Def.'s 56.1 Stmnt. ¶ 38). The new stationery and cards listed her telephone number and email address at the SSA as points of contact. (Id. ¶¶ 38-39; Florio Dec. Ex. G). Neither the cards nor the stationery contained a disclaimer indicating that the SSA did not endorse plaintiff's position as minister. (Id.) Despite the absence of such a disclaimer, plaintiff sent out letters on this stationery. (Id. ¶ 10). She also gave her work information to Reverend Mariah Britton, so that she could provide plaintiff's SSA phone number and email address to people seeking plaintiff's ministerial services. (Id. ¶¶ 42-43).

Plaintiff denies that she created personal stationery listing her SSA phone number and email address, and she denies sending letters using this stationery. However, she admits that she sent one letter with three copies to the EEOC, written on the "original stationery."[9] (Pl.'s 56.1 Opp. ¶¶ 38-40). Plaintiff admits that at some time between November 1, 2004 and the date the SSA instituted discipline regarding plaintiff's use of her SSA email account and phone numbers, the Reverend Mariah Britton informed plaintiff that she could not use her work number at the SSA or the church name or letterhead on business cards. (Pl.'s 56.1 Opp. ¶ 60; Def.'s 56.1 Stmnt. ¶ 60). She also claims that when she provided Reverend Britton with the stationery and business cards, the Reverend "noticed Plaintiff's work number and told her to change the

---

[9]It is unclear what "original stationery" refers to, since plaintiff has also denied creating the personal stationery referred to in Defendant's 56.1 Statement ¶ 37. (See Pl.'s 56.1 Opp. ¶ 37).

stationery so as not to reflect SSA's numbers." (Id. ¶ 42; Pl.'s Ex. 20).[10]

Plaintiff contends that in 2000, she provided a business card to Alyce Furman, District Manager of the Avenue X Office, to notify the SSA that plaintiff had another business outside the SSA. (Def.'s 56.1 Stmnt. ¶¶ 44, 45). The SSA considered this work as a minister to be a business. (Id. ¶ 46). Although plaintiff denies giving this card to Ms. Furman and will neither admit nor deny knowledge of whether the SSA considered her ministry work to be a business (see Pl.'s 56.1 Opp. ¶¶ 45, 46), she concedes that after speaking with Reverend Britton, she learned that she was not allowed to include her SSA contact information on her personal stationery and cards. (Id. ¶ 47).

Defendant contends that on October 8, 2004, plaintiff sent an email from her SSA address to a Dr. Han, in which she referred to her prior religious education and appearances with the Riverside Church Ordination Council. (Def.'s 56.1 Stmnt. ¶¶ 49, 50). The email did not contain any disclaimer language as required by SSA policy. (Id. ¶ 51). Plaintiff admits that she sent the email, but contends that "this was a legal use of government property." (Pl.'s 56.1 Opp. ¶¶ 49, 50, 51).

On November 1, 2004, plaintiff sent a letter to Chief Administrative Law Judge Kenneth W. Chu on her letterhead, containing her SSA email address and phone number. (Def.'s 56.1 Stmnt. ¶ 52, Florio Dec. Ex. I; Pl.'s 56.1 Opp. ¶ 52). She also sent a copy of the letter to Peter Krynski, Assistant Regional Counsel for SSA, Office of the General Counsel. (Def.'s 56.1 Stmnt. ¶ 53; Pl.'s 56.1 Opp. ¶ 53). The letter did not contain any disclaimer language (Def.'s

---

[10]Again, given that she denied creating this stationery (see Pl.'s 56.1 Opp. ¶ 38), it is unclear how she could have given it to the Reverend.

56.1 Stmnt. ¶ 54, Florio Dec. Ex. I), but plaintiff contends that no disclaimer was necessary and that she would have been allowed to use her SSA address in this instance. (Pl.'s 56.1 Opp. ¶¶ 52, 53).

Defendant asserts that plaintiff also used her SSA email account to send an email to a "Mr. Vacca" on November 17, 2004. (Def.'s 56.1 Stmnt. ¶ 55, Florio Dec. Ex. J). In the email, plaintiff referred to herself as "Minister Betty Jean Smith," but she failed to include any disclaimer language indicating that her position was not one endorsed by the SSA. (Def.'s 56.1 Stmnt. ¶¶ 56-57, Florio Dec. Ex. J). Although plaintiff admits sending the email and referring to herself as "Minister," she claims that no disclaimer language was required. (Pl.'s 56.1 Opp. ¶¶ 55-57).

On November 22, 2004, plaintiff sent an essay, entitled "Living in The Midst of Death" by "Minister Betty Jean Smith" to a third person. (Def.'s 56.1 Stmnt. ¶ 58, Florio Dec. Ex. K). Although she used her SSA email account to send this essay, she failed to provide any disclaimer language. (Id. ¶¶ 58-59, Florio Dec. Ex. K). Plaintiff admits that she sent this essay as a "contest entry" but she claims that no disclaimer was required. (Pl.'s 56.1 Opp. ¶¶ 58-59).

On January 19, 2005, the Avenue X Office conducted an investigative "Weingarten interview" with plaintiff and her Union representative regarding plaintiff's use of the letterhead and business cards. (Def.'s 56.1 Stmnt. ¶ 61; Pl.'s 56.1 Opp. ¶ 61). On April 15, 2005, the SSA proposed a five-day suspension without pay. (Def.'s 56.1 Stmnt. ¶ 62, Florio Dec. Ex. L; Pl.'s 56.1 Opp. ¶ 62). Defendant contends that plaintiff, along with Halpern and plaintiff's Union representative, participated in an oral presentation on the Proposal to Suspend held on April 28, 2005, after which a Decision to Suspend was signed by Steven Halpern and issued on May 31,

2005. (Def.'s 56.1 Stmnt. ¶¶ 64-65). Plaintiff denies this (see Pl.'s 56.1 Opp. ¶ 64), and instead she claims that the Proposal to Suspend letter, which cited her use of her SSA email address and telephone number on Church stationery, was improper because she did not violate SSA policy. In addition, plaintiff claims that neither William Timchek, her immediate supervisor, nor Steven Halpern had any authority or bases on which to suspend her. (Pl.'s 56.1 Opp. ¶¶ 62-63).

Plaintiff was thereafter suspended without pay from June 6, 2005 through June 10, 2005. (Id. ¶ 66;[11] Pl.'s 56.1 Opp. ¶ 66). Plaintiff again contends that Halpern had no authority or basis on which to suspend her. (Pl.'s 56.1 Opp. ¶ 65).

On May 26, 2005, plaintiff sought informal EEO counseling regarding her suspension, and on July 26, 2005, EEO Specialist Mavis Johnson issued a Notice of Right to File a Formal Complaint through plaintiff's Union representative. (Def.'s 56.1 Stmnt. ¶¶ 68-69; Florio Dec. Ex. N; Pl.'s 56.1 Opp. ¶¶ 68-69). Plaintiff thereafter filed a formal complaint dated August 9, 2005;[12] the SSA notified plaintiff's representative on August 19, 2005 that the SSA had accepted plaintiff's complaint on the basis of religious discrimination. (Def.'s 56.1 Stmnt. ¶ 71; Florio Dec. Ex. O). Plaintiff filed the instant lawsuit on April 18, 2006 in which she lists retaliation as her only claim under Title VII. (Id. ¶¶ 72, 74; Florio Dec. Ex. Q ¶¶ 16, 19-24; Pl.'s 56.1 Opp. ¶¶ 72, 74).

In her 56.1 Statement and Memorandum of Law, plaintiff contends that her retaliation

---

[11]Defendant's 56.1 Statement contains two paragraphs numbered as "64," and no paragraph "66." The Court has renumbered the second paragraph 64, which comes after paragraph 65, as "¶ 66."

[12]According to defendant, plaintiff had previously filed six unrelated EEO complaints on March 19, 1996, June 7, 1999, February 23, 2001, May 8, 2001, July 15, 2002, and March 7, 2005. (Def.'s 56.1 Stmnt. ¶ 80).

claim is based on three EEOC complaints that she filed during February 2001, May 4, 2001, and July 5, 2002 and were still pending when plaintiff was suspended in 2005, and on a decision that came down in her favor on March 30, 2000, from which the Agency then appealed. (Pl.'s 56.1 Opp. ¶ 85; Pl.'s Mem.[13] at 4-5). However, during her deposition held on June 27 and June 28, 2007, plaintiff testified that the basis of her retaliation claim was a 2001 lawsuit that she won, based on an unrelated SSA policy. (Def.'s 56.1 Stmnt. ¶¶ 75, 78; Pl.'s 56.1 Opp. ¶¶ 75, 78). The SSA claims that it has no record of the 2001 lawsuit. (Def.'s 56.1 Stmnt. ¶ 79; Young Dec. ¶ 4). In support of her claim that there is a record of this lawsuit, plaintiff provides a complaint currently pending before Administrative Law Judge Kevin Berry of the EEOC.[14] (Id. ¶ 86, Pl.'s Ex. 17).

Finally, defendant contends that in her deposition, plaintiff asserted claims of religious discrimination as part of this lawsuit despite the absence of such claims in her Complaint and the absence of any motion to amend to add these claims. (Id. ¶¶ 76-77).

---

[13]Citations to "Pl.'s Mem." refer to Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, dated June 30, 2008.

[14]While plaintiff claims that the open complaint against the SSA currently pending before Judge Berry shows that there is a record of the 2001 lawsuit, she says in the same paragraph that this open complaint stems from the decision that was resolved in her favor on March 30, 2000. (Pl.'s 56.1 Opp. ¶ 86). She does not address this discrepancy, nor does she provide any documentation of a decision dated in 2001. Thus, it appears that plaintiff was mistaken during her deposition about the year of her lawsuit and intended to say that the decision from 2000 provided the basis for the retaliation against her.

A.  Standards For Summary Judgment

It is well-settled that a party moving for summary judgment has the burden of establishing

that there is no genuine issue of material fact in dispute and that the moving party is entitled to

judgment as a matter of law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986);

Thompson v. Gjivoje, 896 F.2d 716, 720 (2d Cir. 1990).  Since summary judgment is an extreme

remedy, cutting off the rights of the non-moving party to present a case to the jury, see Egelston

v. State Univ. Coll. at Geneseo, 535 F.2d 752, 754 (2d Cir. 1976); Gibralter v. City of New York,

612 F. Supp. 125, 133-34 (E.D.N.Y. 1985), the court should not grant summary judgment unless

it is clear that all of the elements have been satisfied.  See Auletta v. Tully, 576 F. Supp. 191, 194

(N.D.N.Y. 1983), aff'd, 732 F.2d 142 (2d Cir. 1984).  In addition, "'the inferences to be drawn

from the underlying facts . . . must be viewed in the light most favorable to the party opposing

the motion.'"  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986)

(quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)).

Once the moving party discharges its burden of proof under Rule 56(c) of the Federal

Rules of Civil Procedure, the party opposing summary judgment "has the burden of coming

forward with 'specific facts showing that there is a genuine issue for trial.'"  Phillips v. Kidder,

Peabody & Co., 782 F. Supp. 854, 858 (S.D.N.Y. 1991) (quoting Fed. R. Civ. P. 56(e)).  Rule

56(e) "provides that a party opposing a properly supported motion for summary judgment may

not rest upon mere allegation or denials of his pleading."  Anderson v. Liberty Lobby, Inc., 477

U.S. at 256.  Indeed, "the mere existence of some alleged factual dispute between the parties"

alone will not defeat a properly supported motion for summary judgment.  Id. at 247-48

(emphasis added).

In reversing a grant of summary judgment, the Second Circuit noted that the "[t]rial court's task at the summary judgment motion stage of litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them." Quaratino v. Tiffany & Co., 71 F.3d 58, 65 (2d Cir. 1995) (quoting Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994)).

B. Religious Discrimination Claims

Defendant argues that summary judgment should be granted in his favor on plaintiff's claims of religious discrimination and retaliation. First, defendant contends that plaintiff does not state a claim of religious discrimination in her Complaint and that plaintiff has never sought to amend the Complaint to specifically add such a claim. In her Complaint, plaintiff sets forth a number of factual allegations that suggest disparate treatment based on her religion. For example, she alleges that in September 2000, she was denied "Emergency Religious Comp" even though she requested and other employees received such an accommodation. (Compl.[15] ¶ 10). She further alleges that on January 19, 2005, she was required to meet with her supervisor and answer questions about her religious beliefs because of her use of the stationery. (Id. ¶¶ 13-14). However, the Complaint does not explicitly state a claim for religious discrimination; rather, it only asserts that plaintiff was denied her rights under Title VII due to her previous EEOC activities and that she suffered retaliation as a result of these actions. (Id. ¶¶ 16, 17, 20-21). Thus, based on a review of the Complaint, it appears that defendant is correct in his assertion that

---

[15]Citations to "Compl." refer to the Complaint, which was filed on April 18, 2006.

plaintiff has not stated a claim of discrimination based on religion. Indeed, in responsive papers, plaintiff does not contend that she is asserting a claim based on religious discrimination; rather, she contends that she has established a claim based on the SSA's discriminatory policy and practice, which disallowed reasonable accommodation leave in inclement weather to employees with a disability. (Pl.'s Mem. at 6).

Thus, since plaintiff does not appear to be arguing discrimination based on her religion, the Court has not addressed defendant's arguments in this regard except to the extent that plaintiff appears to incorporate her religious discrimination claim within her claim for retaliation.

## C. Retaliation Under Title VII and the ADA

Plaintiff argues that summary judgment should be denied because there are material issues of fact in dispute as to whether she was subjected to disability discrimination and retaliation for her EEOC activity. (Pl.'s Mem.[16] at 6). Specifically, she claims that on March 3, 2000, the N.Y. District Office of the EEOC found that she had met her burden of proving disability discrimination based on the SSA's policy, which disallowed employees with a disability to take reasonable accommodation leave in inclement weather. (Hayes Dec. Ex. 16).[17] Plaintiff asserts that as a consequence of this determination and three other pending EEOC complaints, defendant retaliated against her.

---

[16]Citations to "Pl.'s Mem." refer to Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, dated June 30, 2008.

[17]Citations to "Hayes Dec." refer to the Declaration of Pamela D. Hayes, Esq., dated July 23, 2008. Plaintiff contends that the appeal filed by the SSA was ultimately decided in plaintiff's favor. (Pl.'s Mem. at 6).

1. Standards

The ADA prohibits discrimination against qualified individuals with a disability. Sutton
v. United Air Lines, 527 U.S. 471, 476 (1999). In an ADA discrimination case, the plaintiff has
an initial burden of alleging a *prima facie* case. See Ryan v. Grae & Rybicki, P.C., 135 F.3d 867,
869 (2d Cir. 1998). There are four elements that a plaintiff must show to sustain a *prima facie*
discrimination claim under the ADA: (1) the employer is subject to the ADA, (2) the
discriminated individual suffers from a disability as defined by the ADA, (3) the individual is
otherwise qualified to perform the tasks required of the job, and (4) the individual suffered an
adverse employment action as a result of his/her disability. See id. at 869-70; see also Giordano
v. City of New York, 274 F.3d 740, 747 (2d Cir. 2001); Cusack v. News America Marketing In-
Store Servs., L.L.C., No. 06 CV 6166, 2008 U.S. Dist. LEXIS 50610, at *10 (S.D.N.Y. Jul. 2,
2008).

A claim of retaliation under the ADA is treated separately from a claim of disability
discrimination; a plaintiff need not show that he/she has a disability to make out a retaliation
claim. See, e.g., Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155, 158 (2d Cir.
1999). The ADA prohibits an employer from discriminating against an individual because "such
individual has opposed any act or practice made unlawful by this Act or because such individual
made a charge, testified, assisted, or participated in any manner in an investigation, proceeding,
or hearing under this Act." 42 U.S.C. § 12203(a).

When a plaintiff alleges a claim of retaliation under the ADA, the Court proceeds under a
burden-shifting analysis similar to that employed in cases arising under Title VII of the Civil
Rights Act of 1964. See Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d at 159

(applying "the framework used in analyzing retaliation claims under Title VII in analyzing a claim of retaliation under the ADA"). The plaintiff must first present a *prima facie* case of retaliation; then it falls to the employer to provide a non-retaliatory reason for its decision. Upon making such a showing, the burden returns to the plaintiff to demonstrate that the employer's proffered explanation is pretextual. See Pugliese v. Verizon New York, Inc., No. 05 CV 4005, 2008 U.S. Dist. LEXIS 52677, at *54 (S.D.N.Y. Jul. 9, 2008) (citing Deravin v. Kerik, No. 00 CV 7487, 2007 WL 1029895, at *8 (S.D.N.Y. Apr. 2, 2007)).

The plaintiff must establish the following four elements to prove a *prima facie* case: (1) the employee was engaged in an activity protected by the ADA, (2) the employer was aware of that activity, (3) an employment action adverse to the plaintiff occurred, and (4) there existed a causal connection between the protected activity and the adverse employment action. Kemp v. Metro-North Railroad, No. 04 CV 9926, 2007 WL 1741256, at *16 (S.D.N.Y. Jun. 12, 2007) (citing Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d at 159). In examining whether plaintiff has presented a *prima facie* case, the Court determines only "whether proffered admissible evidence would be sufficient to permit a rational trier of fact to infer a retaliatory motive." Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005).

2. Analysis

In this case, defendant does not dispute that plaintiff engaged in protected EEO activity by filing these referenced lawsuits and claims prior to her suspension in June 2005. See Muller v. Costello, 187 F.3d 298, 311 (2d Cir. 1999) (holding that there is no dispute that plaintiff's filing of a reasonable accommodation request is a protected activity under the ADA). A filing of a request for a reasonable accommodation is protected by the ADA provided that plaintiff had a

15

"'good faith, reasonable belief that the underlying challenged actions of the employer violated the law.'" Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d at 159 (quoting Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons, 842 F.2d 590, 593 (2d Cir. 1988)) (internal citation omitted).

Nor does defendant claim that he was unaware of plaintiff's activities or that the suspension for five days constituted an adverse employment action. (Def.'s Rep.[18] at 7). Rather, defendant argues that plaintiff has failed to demonstrate that "'a causal connection exists between the protected activity and [the challenged action], i.e., that a retaliatory motive played a part in the adverse employment action.'" (Id. (quoting Cifra v. General Electric Co., 252 F.3d 205, 216 (2d Cir. 2001) (citations omitted)).

In response, plaintiff argues that the causal connection can be inferred simply due to the temporal proximity between the termination and the pendency of these actions. (Pl.'s Mem. at 9). The Second Circuit has held that a plaintiff can establish causation "'indirectly by showing that the protected activity was closely followed in time by the adverse action.'" Cifra v. General Electric Co., 252 F.3d 205, 217 (2d Cir. 2001) (quoting Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1178 (2d Cir. 1996)) (internal citation omitted). However, the Supreme Court, in Clark County School District v. Breeden, 532 U.S. 268, 273-74 (2001), made it clear that "[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'" "Generally, district courts in

---

[18]Citations to "Def.'s Rep." refer to Defendant's Reply Memorandum of Law in Support of His Motion for Summary Judgment, dated July 25, 2008.

the Second Circuit have found that 'a passage of two months between the protected activity and the adverse employment action seems to be the dividing line'" as to when an adverse employment action can be inferred to be connected to a protected activity. O'Neal v. State Univ. of New York, No. 01 CV 7802, 2006 WL 3246935, at *15 (E.D.N.Y. Nov. 7, 2006) (quoting Cunningham v. Consol. Edison, Inc., No. 03 CV 3522, 2006 WL 842914, at *19 (E.D.N.Y. Mar. 28, 2006) (collecting cases)). Indeed, in Nicastro v. Runyon, 60 F. Supp. 2d 181, 185 (S.D.N.Y. 1999), the court noted that "[c]laims of retaliation are routinely dismissed when as few as three months elapse between the protected . . . activity and alleged act of retaliation." See also Hollander v. American Cyanamid Co., 895 F.2d 80 (2d Cir. 1990) (finding period of three months insufficient to establish temporal proximity); Miller v. Norton, No. 04 CV 3223, U.S. Dist. LEXIS 25329, *26 (E.D.N.Y. Mar. 31, 2008) (finding no temporal proximity where more than one year elapsed between filing of complaint and failure to promote); Fitch v. R.J. Reynolds Tobacco Co., 675 F. Supp. 133, 138 (S.D.N.Y. 1987) (finding period of seven months insufficient).

Plaintiff argues that even though the initial decision providing the basis for the retaliation against her was in May of 2000, she subsequently filed three other EEOC cases against the SSA in February 2001, May 2001, and July 2002. (Pl.'s Mem. at 7). These subsequent cases were not decided until 2006, and the appeal from the initial lawsuit was still pending as of June 24, 2008. (Id., Pl.'s Ex. 17).

However, with the exception of the one complaint filed in March 2005, all of her complaints were filed more than three years prior to her suspension; one, filed in March 1996, was filed more than nine years prior to the May 2005 decision to suspend. Plaintiff also appears

17

to assert that the suspension was in retaliation for her November 2004 letter to Administrative Law Judge Kenneth Chu in an EEO proceeding. (Pl.'s Mem. at 9). Not only is this allegation not included in plaintiff's Complaint, but the letter was written more than six months prior to the suspension, thus raising the same issues regarding lack of temporal proximity sufficient to establish a causal connection. See Stringfellow v. Wyckoff Heights Med. Center, No. 95 CV 3041, 1998 U.S. Dist. LEXIS 16346, *17 (E.D.N.Y. Sept 9, 1998) (finding that termination four months after filing of complaint does not constitute causal connection).

Even with respect to the March 2005 claim, plaintiff has failed to present any evidence beyond temporal proximity to suggest a connection between the filing of that claim and the May 31, 2005 decision to suspend her. Although filed within the three month time frame discussed in Hollander and Nicastro, temporal proximity alone is insufficient to establish a retaliatory motive where other evidence erodes the causal connection between the protected activity and the adverse employment action. See O'Neal v. State Univ. of New York, 2006 WL 3246935, at *15-16 (finding temporal proximity of a month-and-a-half was insufficient to establish pretext and that "[t]he mere filing of a discrimination complaint cannot paralyze an employer from making personnel decisions"); Absher v. Flexi Int'l Software, Inc., No. 302 CV 171, 2005 WL 2416203, at *8 (D. Conn. September 30, 2005) (granting summary judgment on retaliation claim where slightly less than one month passed between complaint and termination, but there was "ample evidence" showing plaintiff's "work-performance shortcomings" and general department layoffs). Here, plaintiff has not proferred any explanation as to why this March complaint prompted the SSA to take action against her after more than nine years of EEOC activity on plaintiff's part. See Slattery v. Swiss Reinsurance America Corp., 248 F.3d 87, 95 (2d Cir. 2001)

18

("[w]here timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise").[19]

Apart from the issue of temporal proximity, a plaintiff may attempt to prove causation by offering circumstantial evidence demonstrating disparate treatment of fellow employees or by demonstrating a retaliatory animus directed at plaintiff. See Gordon v. New York City Bd. of Educ., 232 F.3d 111, 117 (2d Cir. 2000). Here, however, plaintiff has offered no evidence supporting direct discriminatory animus, and she concedes that she has not identified any similarly situated employees. (See Pl.'s 56.1 Opp. ¶ 67).

Accordingly, the Court finds that plaintiff has not offered sufficient evidence to support an inference of causal connection between her protected activity and the suspension to satisfy the elements necessary to establish a prima facie case of retaliation under Title VII or the ADA.

Even assuming that plaintiff could be found to have demonstrated a *prima facie* case of retaliation, under the established burden shifting analysis, defendant is given an opportunity to proffer a legitimate non-discriminatory reason for the adverse employment action. Pugliese v. Verizon New York, Inc., 2008 U.S. Dist. LEXIS 52677, at *54. Here, defendant asserts that plaintiff was not suspended because of her EEO activity, but because she violated the provisions of SSA policy that prohibit employees from using SSA equipment for a personal business

---

[19]Defendant notes that in her Complaint, plaintiff fails to allege that her retaliation claim is based on the fact that these earlier complaints were still pending as of the date of her suspension. Even if these prior claims create temporal proximity, the Court finds there is no causal connection. See McAllen v. Von Esson, 517 F. Supp. 2d 672, 683 (S.D.N.Y. 2007) (noting that where plaintiff had repeatedly engaged in protected acts over a period of time, any causal connection based on temporal proximity was "rendered unremarkable").

without explicitly including a disclaimer that the government did not endorse the message. In his motion for summary judgment, defendant has presented documentation that shows a number of instances in which plaintiff, through the use of stationery bearing her SSA address and office phone number, sent letters and emails to individuals relating to her ministry, which did not contain the requisite disclaimer. Although plaintiff has denied that some of these were in violation of SSA policy, she admits that she sent this correspondence and that she was told by Reverend Britton that she was not to use her office information on correspondence relating to the church. As such, she has, at least implicitly, conceded that she used her SSA information in connection with her ministry activities. Regardless, the emails and letters sent by plaintiff, which defendant submits to the Court in support of his motion for summary judgment, speak for themselves. This correspondence relating to plaintiff's ministry and bearing her SSA contact information by definition violate SSA policy. Thus, based on the undisputed facts presented in connection with the motion, the Court finds that the defendant has carried his burden of proffering a legitimate non-discriminatory reason for the adverse employment action.

Plaintiff has not presented any evidence to establish that the employer's reason was pretextual. Apart from arguing that she had filed these EEO complaints, she has not provided any evidence to demonstrate that the SSA retaliated against her for these filings. As discussed above, there is no actual evidence that the suspension was in any way related to the complaints that she filed. Indeed, she had filed several complaints over a period of nine years prior to the suspension with no other adverse effects.

## CONCLUSION

Accordingly, the Court respectfully recommends that the defendant's motion for summary judgment be granted.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within ten (10) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; Small v. Secretary of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

The Clerk is directed to mail copies of this Report and Recommendation to the parties.

**SO ORDERED.**

Dated: Brooklyn, New York
      March 2, 2008

Cheryl L. Pollak
United States Magistrate Judge